UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                        |   |                        |
|------------------------|---|------------------------|
| **LANCE HULLUM,**      | ) |                        |
|                        | ) |                        |
| Plaintiff,             | ) |                        |
|                        | ) | C.A. No. 23-10082-PBS  |
| v.                     | ) |                        |
|                        | ) |                        |
| **CAROL MICI, et al.,**| ) |                        |
|                        | ) |                        |
| Defendants.            | ) |                        |

## MEMORANDUM AND ORDER

**March 26, 2025**

Saris, D.J.

In this action, pretrial detainee Lance Hullum, who is currently confined at Plymouth County Correctional Facility, claims, *inter alia*, that when he was incarcerated as a pretrial detainee at the Souza-Baranowski Correctional Center ("SBCC"), certain correctional officers called him a "pedophile," "chicken hawk," and "child molester" in front of other inmates with the intent to incite the prisoners to injure him.[1]  Now pending before the Court are the defendants' motion for partial summary judgment based on Hullum's alleged failure to exhaust his administrative remedies, Dkt. 187, and motion for failure to

---

[1] On May 12, 2024, Hullum was transferred from SBCC to the Plymouth County Correctional Facility.  Dkt 132.

state a claim upon which relief may be granted, Dkt. 158.[2] For the reasons below, the Court DENIES the motion for partial summary judgment without prejudice and DENIES the motion to dismiss with regard the matters in that motion that were not previously adjudicated.[3]

## I. The Amended Complaint

The operative pleading in this matter is amended complaint filed on January 19, 2024 ("Amended Complaint"). ECF 95.[4] The Amended Complaint concerns alleged events that occurred after the commencement of this action. The remaining defendants in the Amended Complaint are four SBCC correctional officers: Stephen Adams, Taylor Landry, Steven Clark, and Brendon Metcalf.

---

[2] On July 30, 2024, the Court allowed in part the motion to dismiss by dismissing all claims for injunctive relief, all claims against the Department of Correction, all official capacity claims, and all individual claims against defendants Mici and Zoldak. Dkt. 180. With regard to dismissal based on failure to exhaust administrative remedies, the Court converted the motion into one for partial summary judgment and gave the parties the opportunity to submit additional briefings. Id. What remains to be adjudicated in the motion to dismiss are the defendants' arguments that (1) Hullum has not plausibly pleaded that the remaining defendants—four correctional officers— violated his federal rights; and (2) the defendants are entitled to qualified immunity.

[3] The Court writes for the parties and assumes the reader's familiarity with this action.

[4] The Court denied Hullum's subsequent motions to further amend his complaint to restore the claims he had previously asserted concerning events prior to November 1, 2023. ECF Nos. 121, 127, 140, 142, 151, 155.

According to Hullum, on November 1, 2023, he was moved to the H-2 Unit of SBCC, where the defendants "called plaintiff a pedophile; child molester, snitch in front of other inmates, in violation of [his] 1st and 8th Amendment Rights." Amend Compl. Dkt. 95, ¶ 11. Hullum claims this conduct took place on eight days in November 2023, six days in December 2023, and on January 6, 2024. Id. Hullum further alleges that the defendants "incite other inmates by continuously calling out"[5] his name "in retaliation for exercising his First Amendment right to file grievances," which is "protected conduct[]." Id. ¶ 12. Hullum claims that the defendants "have made threats to kill plaintiff and have plaintiff killed by other people [since] November 1, 2023." Id. ¶ 13. In the portion of the pleading titled "Claims for Relief," Hullum asserts that "[t]he action of [the defendants] calling plaintiff a snitch, pedophile, child molester [and] chicken hawk in front of other inmates is a very serious advers[e] action in retaliation for plaintiff filing grievances on correctional officers for their misconduct." Id. ¶ 17.

Hullum attached to his Amended Complaint 25 informal grievances that he filed during the relevant time between

---

[5] Based on Hullum's allegations in the informal grievances he attached to the Amended Complaint, the Court assumes that "calling out" refers to use of a loudspeaker.

3

November 12, 2023 and January 6, 2024.  Dkt. No. 95-1 at 1-25. In these informal grievances, Hullum alleged, inter alia, that: (1) Metcalf called him a rapist over the loudspeaker, called him a pedophile and a chicken hawk in front of other inmates, and threated to have a jail house informant fight him, id. at 15, 16, 24; (2) Landry stated in front of other inmates that he was in custody because he had raped children, id. at 7; Clark told another inmate that he is a child molester and a chicken hawk, and that someone in the unit "needs to murder him," id. at 3; and (4) Adams called him a pedophile over the loudspeaker, id. at 13.  Each of these informal grievances show that the document was returned to Hullum with a notation that he should file a formal grievance because informal grievances are not required for allegations of staff misconduct.

## II. Motion for Summary Judgment: Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act, a prisoner cannot bring a federal lawsuit concerning prison conditions "until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  In their motion to dismiss for failure to state a claim upon which relief may be granted, the defendants argued that this action is subject to dismissal because Hullum had not complied with the exhaustion requirement before bringing

4

this action.⁶  The Court converted the issue to one for summary judgment as failure to exhaust is an affirmative defense and Hullum's alleged failure to exhaust available administrative remedies was not clear from the face of the Amended Complaint.

As set forth below, the defendants contend, and Hullum does not appear to deny, that he did not file a "formal" grievance concerning the claims in the amended complaint.  The Court must therefore consider whether Hullum exhausted "available" administrative remedies.  The Court must deny the motion for partial summary judgment unless there the defendants show there is no genuine issue of material fact concerning the issue of exhaustion and that the defendants are entitle to judgment as a matter of law.

In Ross v. Blake, 578 U.S. 632, 642 (2016), the Supreme Court provided a framework for considering whether a stated administrative remedy is "available," or, in other words, whether a grievance procedure is "'capable of use' to obtain 'some relief for the action complained of.'"  Ross v. Blake, 578 U.S. 632, 642 (2016) (quoting Booth v. Churner, 532 U.S. 731, 738 (2001)).  At issue was whether the grievance procedure

---

⁶ Where, as here, the operative pleading concerns events that occurred after the filing of the original complaint, "the plaintiff need only show that the new claims were exhausted before tendering the amended complaint to the clerk for filing." Akhtar v. Mesa, 698 F.3d 1202, 1210 (9th Cir. 2012).

5

Case 1:23-cv-10082-PBS    Document 204    Filed 03/26/25    Page 6 of 15

described in the inmate's handbook was "available" with regard to a claim of an assault by a staff member even though wardens had routinely denied said grievances as procedurally improper in light of parallel investigations by an internal investigative unit.

In deliberating this question, the Court identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Id. at 643. "First, . . . an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. Examples of this lack of availability include when "a prison handbook directs inmates to submit their grievances to a particular administrative office—but in practice that office disclaims the capacity to consider those petitions," or when "administrative officials have apparent authority, but decline ever to exercise it." Id. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. "In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Id. at 643-44. Third, an administrative remedy is not available "when prison administrators thwart inmates from taking advantage of a

6

grievance process through machination, misrepresentation, or intimidation." Id. at 644.  Applying this framework, the Supreme Court remanded the case "for further consideration of whether [the plaintiff] had 'available' remedies to exhaust." Id. at 648.[7]

Using the standards set forth in Ross, this Court finds that genuine issues of material fact concerning the availability of the grievance process exist.  Defendants contend that Hullum failed to exhaust his administrative remedies because he never filed a formal grievance against any Defendant for harassing or calling him derogatory names.  Dkt. 187 (referencing affidavit of SBCC Institutional Grievance Coordinator, Dkt. 105-6). Hullum does not take a contrary position, but he represents that Commissioner Mici and Correction Officer Tocci had blocked his access to the formal grievance process and that, at some point, he was only permitted to bring informal grievances.  Dkt. 194 ¶ 3; Dkt. 195-3.  Because "[e]vidence of the appropriate official's refusal to give a prisoner an available form 'is sufficient to permit a finding' that the administrative remedies were not available," Gooch v. Young, 24 F.4th 624, 627 (7th Cir. 2022) (quoting Hill v. Snyder, 817 F.3d 1037, 1041 (7th Cir.

---

[7] After remand, the parties filed a stipulation of dismissal. See Blake v. Ross, C.A. No. 09-02367, Dkt. 191 (D. Md. Oct. 11, 2017).

2016)), there is a genuine issue of material fact as to what administrative remedies were available.  See also Lamb v. Kendrick, 52 F.4th 286, 297 (6th Cir. 2022) (finding that genuine issue of material fact existed as to exhaustion where plaintiff swore in an affidavit that prison official refused to provide him a grievance form, and reversing district court's grant of summary judgment in favor of the defendants based on failure to exhaust administrative remedies).

Further, there is a genuine issue of material fact as to whether filing a formal grievance was a vehicle by which Hullum could obtain some sort of relief.  Hullum provided a letter in which Superintendent Gray stated that that a certain complaint Hullum had made concerning "misconduct by staff" was "non-grievable." Dkt. 197-1.  The Court has reviewed Superintendent Gray's explanation of that letter and credits his statement that the Informal Complaint Coordinator had instructed Hullum to file a formal grievance. Dkt. 201.  Notwithstanding, at the summary judgment stage, Gray's statement that complaints about misconduct by staff are "nongrievable" makes the administrative scheme opaque and confusing.  The Court concludes there is a genuine issue of material fact as to the availability of relief

through the formal grievance process under the alleged circumstances.[8]

For those reasons, the Court DENIES the motion for partial summary judgment.  However, this denial is without prejudice to renewal after both parties have been able to engage in discovery.

**III. Motion To Dismiss: Failure to State a Claim for Relief**

To state a claim upon which relief may be granted, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The plaintiff's obligation to provide the grounds of his claim "requires more than labels and conclusions." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The plaintiff's well-pled factual allegations must "suffice to 'raise a reasonable expectation that discovery will reveal evidence' . . . and 'allo[w] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Matrixx Initiatives, Inc. v. Siracusano, 563 U.S.

---

[8] The Court also notes Massachusetts law requires that all allegations of employee misconduct, whether or not set forth in a grievance, must "filed and reviewed administratively pursuant to the 103 DOC 522: Internal Affairs Unit Policy."  103 C.M.R. 491.09(2), (5)(b).  An Institution Grievance Coordinator is not required to immediately investigate a grievance that has been referred to the Internal Affairs Unit.  See 103 C.M.R. § 491.15(3)(d).

9

27, 46 (2011) (alteration in original) (quoting Twombly, 550 U.S. at 544; Iqbal v. Ashcroft, 556 U.S. 662, 678 (2009). Because Hullum is representing himself, the Court construes the Amended Complaint liberally, holding it to "less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

### A. Failure to Protect

The Eighth Amendment prohibits the imposition of "cruel and unusual punishments," U.S. Const. amend. VIII.[9]  "Prison officials must take reasonable measures to guarantee inmates safety from attacks by other inmates," and "[a]n inmate may sue a correctional facility under the Eighth Amendment for failure to afford adequate protection to inmates from attack by other inmates." Calderon-Ortiz v. LaBoy-Alvarado, 300 F.3d 60, 63–64 (1st Cir. 2002).  "Nevertheless, not every injury a prisoner suffers at the hands of another prisoner is actionable." Id. at 64.  "Prison officials violate the constitutional conditions of confinement only where two requirements are met." Id.  In a failure to protect case, the first requirement is that "the

---

[9] "Pretrial detainees are protected under the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment; however, the standard to be applied is the same as that used in Eighth Amendment cases." Burrell v. Hampshire Cnty., 307 F.3d 1, 7 (1st Cir. 2002).

10

conditions of incarceration pose a substantial risk of serious harm." Id.  The second requirement is that the defendant acted with "'deliberate indifference' to an inmate's health or safety." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

"Deliberate indifference entails something more than mere negligence." Id.  It is a subjective standard that is met "only if the official 'knows of and disregards an excessive risk to inmate health or safety.'" Id. (quoting Farmer, 511 U.S. at 837).  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id.  Here, in alleging that the Defendants purposefully called him a "child molester," "pedophile," or "chicken hawk" in front of other inmates, Hullum he has sufficiently pled a violation of Eighth Amendment rights.  He has plausibly pled that the defendants' alleged misconduct placed him at an objectively serious risk of harm.  See, e.g., Dongarra v. Smith, 27 F.4th 174, 179 (3d Cir. 2022) (where prison officials had required the prison plaintiff to wear a T-shirt that identified him as a sex offender, the plaintiff "faced an objectively serious risk of harm").[10]  Hullum has also plausibly pled that the defendants

---

[10] The defendants mistakenly imply that this case supports their position that Hullum has failed to state a claim upon which

11

were subjectively deliberately indifferent to this risk. He claims that the defendants sought to "incite" other inmates against him and that made threats to have other people kill him. Those allegations, especially when coupled with the oft-acknowledged dangers sex offenders face in a prison setting, see, e.g., Dongarra, 27 F.4th at 179 ("It is obvious that branding [the prisoner plaintiff] a sex offender could make him a target of prison violence."); Moore v. Mann, 823 Fed. App'x 92, 96 (7th Cir. 2020) (per curiam) (noting that "that the sex offender label is stigmatizing in the prison context, and that prison norms may call for the assault of sex offenders"), "suffice to 'raise a reasonable expectation that discovery will reveal evidence.'" Matrixx Initiatives, 563 U.S. at 46 (quoting Twombly, 550 U.S. at 544).[11]

That the defendants' alleged misconduct did not lead to an actual assault on Hullum does not defeat an Eight Amendment

---

relief may be granted. Dkt. 159 at 12. In Dongarra, the court found that the federal prisoner plaintiff had sufficiently alleged an Eighth Amendment violation (even though he had not been assaulted), but that he could not recover damages because the damages remedy recognized in Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), had not been extended to cover the alleged facts. Dongarra, 27 F.4th at 179-81.

[11] See also Kedra v. Schroeter, 876 F.3d 424, 442 (3d Cir. 2017) ("[W]e have regularly relied on the obviousness of risk as a permissible and highly relevant basis from which to infer actual knowledge [of risk].").

claim. See Moore, 823 Fed. App'x at 96 ("The defendants argue that [the plaintiff] has not shown that he was assaulted or suffered any harm. But an inmate need not wait until an actual attack occurs to obtain relief."); Benefield v. McDowell, 241 F.3d 1267, 1272 (10th Cir. 2001) (inmate allegations that officer labeled him a snitch in front of other inmates, even though inmate had not in fact been assaulted, stated a claim under Eighth Amendment).

### B. Qualified Immunity

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct. Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The defendants move to dismiss based on qualified immunity but do not advance any developed argument on that point. Dkt. 159. For that reason alone, the Court may deny the motion to dismiss the case based on qualified immunity.

Further, nothing in the Amended Complaint suggests that the issue of qualified immunity can be resolved at the pleading stage under the alleged facts. Hullum has adequately pled that defendants were deliberately indifferent to an objectively serious risk of harm at the hands of other inmates, and it has

13

long been clearly established that prisoners have a right under the Eighth Amendment to be protected from violence at the hands of other inmates.  See Farmer v. Brennan, 511 U.S. 825, 834 (1994) (finding that, where "transsexual" inmate who "project[ed] feminine characteristics," was assaulted and raped after being placed in the general population, prison officials could be liable for failing to protect the inmate, and remanding for further consideration of the defendants' subjective knowledge)[12]; see also, e.g., Wilk v. Neven, 956 F.3d 1143, 1150 (9th Cir. 2020) (reversing district court's grant of summary judgment based on qualified immunity in failure-to-protect claim, stating that "a prisoner's right to be protected from violence at the hands of other inmates . . . has been clearly established since the Supreme Court's decision in Farmer v. Brennan, in 1994"); Facey v. Dickhaut, 91 F. Supp. 3d 12, 35 (D. Mass. 2014 (concluding that, where genuine issue of material fact existed as to prison officials' knowledge of risk of danger

---

[12] In Farmer, the Court found that remand was appropriate because "the District Court may have mistakenly thought" that plaintiff's admitted failure to express any concern about his safety entitled the prison officials to judgment as a matter of law on the issue of their subjective knowledge.  Id. at 848.  The Court stated that the prisoner could establish the defendants' awareness of the risk based on other evidence and gave as an example a document in the record in which the defendants admitted that the prisoner was likely to experience sexual pressure in the prison because of his "youth and feminine appearance."  Id.

plaintiff faced in new housing unit, summary judgment based on qualified immunity was not merited because "it was clearly established that prison officials violate a prisoner's Eighth Amendment rights when they knowingly place him at a substantial risk of attack from other inmates"); Cordero v. Dickhaut, C.A. No. 11-10098-FDS, 2014 WL 6750064, at *8 (D. Mass. Sept. 19, 2014) (concluding that, where genuine issue of material fact existed as to prison official's knowledge of risk of danger plaintiff faced from his cellmate, summary judgment based on qualified immunity was not merited because "[i]t is well-established that "prison officials have a duty under the 8th and 14th amendments to protect prisoners from violence at the hands of other prisoners" (quoting Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir.1988))).

**IV. Conclusion**

In accordance with the foregoing, the Court hereby orders:

1. The motion for partial summary judgment, Dkt. 187, is DENIED without prejudice.

2. The motion to dismiss, Dkt. 158, is DENIED.

**SO ORDERED.**

/s/ Patti B. Saris
PATTI B. SARIS
UNITED STATES DISTRICT JUDGE