**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
_____
                               )
LANCE HULLUM,                  )
                               )
                Plaintiff,     )
                               )
v.                             )        Civil Action
                               )        No. 23-cv-10082-PBS
STEPHEN D. ADAMS, TAYLOR J.    )
LANDRY, STEVEN C. CLARK, and   )
BRENDON P. METCALF,            )
                               )
                Defendants.    )
_____)
```

**MEMORANDUM AND ORDER**

April 1, 2026

Saris, J.

**INTRODUCTION**

Pro se Plaintiff Lance Hullum brings this action pursuant to 42 U.S.C. § 1983 against four correction officers of the Massachusetts Department of Correction in their individual capacities ("Defendants"). Hullum claims that when he was previously incarcerated as a pretrial detainee at Souza-Baranowski Correctional Center ("SBCC"), Defendants called him various derogatory names like "pedophile," "skinner," "rapist," and "snitch" in front of other inmates with the intent to incite violence against him. Defendants deny these allegations.

Hullum brings two claims: a First Amendment claim alleging that Defendants acted in retaliation for his filing grievances

1

about their misconduct and a failure-to-protect claim under Eighth Amendment standards. He does not claim that any inmate physically injured him because of Defendants' conduct. He seeks compensatory damages for his ongoing psychological issues and the impact of his stress on his lupus.

Defendants now move for summary judgment on Hullum's failure-to-protect claim on the basis of qualified immunity.[1] The Court concludes that the evidence, when viewed in the light most favorable to Hullum, would permit a reasonable jury to find that Defendants violated Hullum's clearly established constitutional rights. The Court therefore **DENIES** Defendants' motion for summary judgment (Dkt. 243).

**BACKGROUND**

Although the parties heavily dispute the underlying facts, the Court "examin[es] the record in the light most favorable to the nonmovant and draw[s] all reasonable inferences in that party's favor." Dusel v. Factory Mut. Ins. Co., 52 F.4th 495, 502 (1st Cir. 2022). Hullum has submitted evidence of the following facts,

---

[1] The Court previously denied Defendants' motion for partial summary judgment based on administrative exhaustion and denied Defendants' motion to dismiss based on qualified immunity. See Hullum v. Mici, No. 23-cv-10082, 2025 WL 928778, at *5 (D. Mass. Mar. 26, 2025). In the instant motion, Defendants do not seek summary judgment on Hullum's First Amendment claim that Defendants were verbally harassing him in retaliation for his filing grievances against them.

primarily through declarations and affidavits (including from other inmates).[2]

Lance Hullum pleaded guilty in 1990 to four counts of raping four different children by force in violation of Mass. Gen. Laws ch. 265, § 22A. Hullum is currently awaiting trial in connection with unrelated charges for physical assault. He was held at SBCC from January 2020 to April 2024. During the period at issue, Defendants Stephen Adams, Taylor Landry, Steven Clark, and Brendon Metcalf were correction officers at SBCC.

According to evidence submitted by Hullum, Defendants called Hullum various derogatory names -- including "pedophile," "child molester," "chicken hawk," "skinner," "rapist," and "snitch" -- in front of other inmates on several occasions between November 2023 and early 2024.[3] A sworn declaration from Hullum states that

---

[2] Given Hullum's pro se status, this Court considers various affidavits and potentially admissible evidence submitted by Hullum throughout the history of this case, even those that are "somewhat buried in the record." Pace v. Salamone, No. 24-1865, 2025 WL 2798641, at *1 (1st Cir. Sep. 29, 2025).

[3] See, e.g., Dkt. 91 at 1 (affidavit of Joshua Eloi stating that he witnessed Adams verbally harassing Hullum by calling him a pedophile, snitch, and "homo" in an attempt to "fuel[] other inmates to attack, stab, [and] even murder" Hullum); Dkt. 98 at 1 (declaration of Joshua Eloi stating that he heard Adams, Landry, and Clark calling Hullum a pedophile and snitch); Dkt. 99 at 1 (declaration of Wilnor Jean Baptiste stating that Metcalf called Hullum a pedophile, snitch, and child molester, asked other inmates "why they letting Hullum live here," and offered a "bag for whoever take[s] him out"); Dkt. 100 at 1 (declaration of Hullum stating that all four Defendants called him a pedophile, chicken hawk, and snitch "in front of other inmates in an attempt to incite [them]

Defendants used these epithets "in an attempt to incite" violence against him. Dkt. 100 at 1. An affidavit submitted by one inmate at SBCC states that Defendants' conduct resulted in "other cons in the unit . . . laughing and yelling get that fucking pig." Dkt. 107 at 1. Hullum also received death threats from Defendants.

Hullum was never physically attacked or harmed by Defendants or by other inmates as a result of Defendants' threats and derogatory remarks. In his deposition, however, Hullum testified that Defendants' conduct exacerbated his lupus symptoms, including by causing him to have lesions, skin rashes, muscle spasms, weight loss, trembling, chills, and sleep deprivation. Hullum seeks damages for these injuries and for psychological distress.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is

---

to react against" him); Dkt. 102 at 1 (declaration of Hadyetou Diaby stating that he heard Metcalf call Hullum a skinner, snitch, pedophile, and rapist multiple times); Dkt. 104 at 1 (declaration of Damien Santos stating that he heard Adams and Landry call Hullum a pedophile and snitch); Dkt. 107 at 1 (declaration of Luis Ruiz stating that he heard Adams call Hullum a pedophile, rat, and rapist "in front of many other inmates to the point that other cons in the unit are laughing and yelling get that fucking pig"); Dkt. 108 at 1 (declaration of Alfred Lane-Bey stating that Clark called Hullum a chicken hawk and that Clark said he was "gonna beat Hullum to death"); Dkt. 110 at 1 (declaration of Jose Hernandez stating that he heard Adams, Landry, and Clark call Hullum a pedophile and snitch).

genuine where the evidence "is such that a reasonable jury could resolve the point in the favor of the non-moving party." Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 87 (1st Cir. 2018) (quoting Cherkaoui v. City of Quincy, 877 F.3d 14, 23-24 (1st Cir. 2017)). "A fact is material" if "it has [the] potential of changing a case's outcome." Doe v. Trs. of Bos. Coll., 892 F.3d 67, 79 (1st Cir. 2018).

"The court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in [its] favor." Carlson v. Univ. of New Eng., 899 F.3d 36, 43 (1st Cir. 2018). Courts construe the filings of a pro se party "liberally," holding them "to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

## DISCUSSION

Defendants seek summary judgment on Hullum's failure-to-protect claim under the doctrine of qualified immunity. They argue that Hullum has failed to provide evidence of a constitutional violation and that even if he has, the unlawfulness of Defendants' actions was not clearly established.

State officials "are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time'" of that violation. District

5

of Columbia v. Wesby, 583 U.S. 48, 62-63 (2018) (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)). "'Clearly established' means that, at the time of the [defendant]'s conduct, the law was '"sufficiently clear" that every "reasonable official would understand that what he is doing"' is unlawful." Id. at 63 (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)). To be clearly established, a legal rule must be "dictated by 'controlling authority' or 'a robust "consensus of cases of persuasive authority."'" Id. (quoting al-Kidd, 563 U.S. at 741-42); see also Rivas-Villegas v. Cortesluna, 595 U.S. 1, 6 (2021) (per curiam) (requiring plaintiffs in most instances to "identify a case that put [the defendant] on notice that his specific conduct was unlawful"). "A 'robust consensus' does not require the express agreement of every circuit." Irish v. Fowler, 979 F.3d 65, 76 (1st Cir. 2020); see id. at 77 (noting that the agreement of three or four circuits is sufficient to clearly establish the law).

The Court examines each prong of the qualified immunity analysis in turn.

## I.   Constitutional Violation

As a pretrial detainee, Hullum is "protected under the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment; however, the standard to be applied is the same as that used in Eighth Amendment cases." Burrell v. Hampshire County, 307 F.3d 1, 7 (1st Cir. 2002). The Eighth Amendment prohibits the

6

imposition of "cruel and unusual punishments." U.S. Const. amend. VIII. As part of this prohibition, the Eighth Amendment "imposes duties on [prison] officials," including to "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). As relevant here, "[p]rison officials must take reasonable measures to guarantee inmates' safety from attacks by other inmates." Calderón-Ortiz v. LaBoy-Alvarado, 300 F.3d 60, 64 (1st Cir. 2002).

While "[a]n inmate may sue a correctional facility under the Eighth Amendment for failure to afford adequate protection to inmates from attack by other inmates . . . , not every injury a prisoner suffers at the hands of another prisoner is actionable." Id. at 63-64. Rather, "[p]rison officials violate the constitutional conditions of confinement" in a failure-to-protect case "only where two requirements are met." Id. at 64. First, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Lakin v. Barnhart, 758 F.3d 66, 70 (1st Cir. 2014) (quoting Farmer, 511 U.S. at 834). Second, "the prison official must have acted, or failed to act, with 'deliberate indifference to inmate health or safety.'" Id. (quoting Farmer, 511 U.S. at 834). The Court now analyzes each of these two requirements.

### A.    Substantial Risk of Serious Harm

"The risk of inmate-upon-inmate violence has been held a sufficiently serious harm to implicate inmates' constitutional rights." Calderón-Ortiz, 300 F.3d at 66. Although verbal harassment does not itself constitute cruel and unusual punishment, see DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000), abrogated on other grounds by Savory v. Cannon, 947 F.3d 409 (7th Cir. 2020) (en banc), courts had repeatedly recognized, prior to November 2023 (when the alleged name-calling began), the physical dangers posed by a prison official labeling an inmate a "snitch," "sex offender," or similar derogatory terms. See, e.g., Dongarra v. Smith, 27 F.4th 174, 179 (3d Cir. 2022) ("It is obvious that branding [the prisoner plaintiff] a sex offender could make him a target of prison violence."); Moore v. Mann, 823 F. App'x 92, 96 (3d Cir. 2020) (per curiam) (noting "that the sex offender label is stigmatizing in the prison context, and that prison norms may call for the assault of sex offenders"); Benefield v. McDowall, 241 F.3d 1267, 1271 (10th Cir. 2001) ("[L]abeling an inmate a snitch has the potential for great harm and may violate constitutional guarantees."); Neal v. Shimoda, 131 F.3d 818, 829 (9th Cir. 1997) ("We can hardly conceive of a state's action bearing more 'stigmatizing consequences' than the labeling of a prison inmate as a sex offender."); see also Renchenski v. Williams, 622 F.3d 315, 326 (3d Cir. 2010) ("[S]tudies suggest

8

that sexual offenders' rate of sexual abuse in prison ranges from 34% to 50% higher than that of the general prison population.").

Accordingly, numerous courts have found a substantial risk of harm under similar conditions of incarceration. See, e.g., Dongarra, 27 F.4th at 178-79 (concluding that, where prison officials required the prisoner plaintiff to wear a T-shirt that identified him as a sex offender, the plaintiff "faced an objectively serious risk of harm"); Benefield, 241 F.3d at 1270-71 (finding that prisoner plaintiff stated an Eighth Amendment violation by alleging that prison official "put him in danger of attack or even death at the hands of other inmates by circulating rumors that he was a snitch"). The same is true here: by allegedly calling Hullum a "pedophile," "child molester," "chicken hawk," "skinner," "rapist," and "snitch" in front of other inmates, Defendants created a substantial risk of harm to Hullum. Indeed, one inmate affidavit states that Defendants' actions resulted in "other cons in the unit . . . laughing and yelling get that fucking pig." Dkt. 107 at 1.

Defendants argue that they are entitled to summary judgment because Hullum "admits that he did not suffer an actual injury as a result of any Defendant's conduct." Dkt. 244 at 11-12. But the lack of an actual attack does not defeat an Eighth Amendment claim. See, e.g., Moore, 823 F. App'x at 96 ("[A]n inmate need not wait until an actual attack occurs to obtain relief."); Benefield, 241

F.3d at 1272 (holding that inmate's allegations that officer labeled him a snitch in front of other inmates stated a claim under Eighth Amendment even though he had not in fact been assaulted); Brown v. Narvais, 265 F. App'x 734, 735-36 (10th Cir. 2008) (same, as to allegation that defendants had labeled the plaintiff a child molester). As the First Circuit has stated, "a prisoner need not wait to be assaulted to obtain relief for the infringement" of his right to be "protect[ed] from violence at the hands of other prisoners." Purvis v. Ponte, 929 F.2d 822, 824-25 (1st Cir. 1991) (quoting Leonardo v. Moran, 611 F.2d 397, 398-99 (1st Cir. 1979)).

Similarly, Defendants cite a section of the Prison Litigation Reform Act ("PLRA") that provides that "[n]o [f]ederal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Although the First Circuit has declined to decide whether this provision applies to constitutional claims, see Kuperman v. Wrenn, 645 F.3d 69, 73 n.5 (1st Cir. 2011), many circuits have held that it applies to all federal civil actions including those alleging constitutional violations, see Thompson v. Carter, 284 F.3d 411, 417 (2d Cir. 2002) (collecting cases). Hullum alleges exacerbation of his lupus illness. He testified in his deposition that Defendants' conduct caused him to have lesions, skin rashes, muscle spasms, weight loss, trembling, chills, and loss of sleep. Defendants point out

10

in a footnote that Hullum submitted no medical expert to support this testimony, but they do not develop the argument. See P.R. Tel. Co. v. San Juan Cable LLC, 874 F.3d 767, 770 (1st Cir. 2017) ("[A]rguments raised only in a footnote or in a perfunctory manner are waived." (quoting Nat'l Foreign Trade Council v. Natsios, 181 F.3d 38, 60 n.17 (1st Cir. 1999))). They also do not brief the issue of whether Hullum's alleged injuries are "more than . . . de minimis physical injur[ies]," the standard used by most circuits. Johnson v. Reyna, 57 F.4th 776 (10th Cir. 2023); see id. at 776-77 (collecting cases). The Court thus concludes that Hullum's testimony is "enough to keep his claims alive." Kuperman, 645 F.3d at 73 n.5; see Moore, 823 F. App'x at 97 & n.4.

Accordingly, viewing the record in the light most favorable to Hullum, a reasonable jury could find that Defendants placed Hullum at a substantial risk of serious harm by calling him stigmatizing names that could incite violence from other inmates.

## B.    Deliberate Indifference

Turning to the second requirement of an Eighth Amendment failure-to-protect claim, Hullum must show that Defendants acted with deliberate indifference. See Calderón-Ortiz, 300 F.3d at 64. "[D]eliberate indifference entails something more than mere negligence . . . ." Id. The standard is "a subjective one" which is satisfied "only if the official 'knows of and disregards an excessive risk to inmate health or safety.'" Id. (quoting Farmer,

11

511 U.S. at 837). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer, 511 U.S. at 837).

Hullum has presented evidence that all four Defendants sought to incite violence against him by other inmates by calling him derogatory names and that Defendants even made death threats against him. A reasonable factfinder could conclude based on this evidence that Defendants were deliberately indifferent to a risk to his safety (or, indeed, that they even consciously intended such a risk). "After all, who better knows the opprobrium and consequent effect thereof that attaches to the label of snitch than those who work daily within the inmate population." Irving v. Dormire, 519 F.3d 441, 451 (8th Cir. 2008); see also Farmer, 511 U.S. at 842 ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."). Because Hullum's evidence permits a reasonable jury to find in his favor on both requirements of a failure-to-protect claim, he has satisfied the first prong of the qualified immunity test at this stage.

## II.  Clearly Established

The Court also concludes that Hullum has met his burden as to the second prong of the qualified immunity inquiry. While no controlling Supreme Court or First Circuit cases are directly on

12

point, there was "a robust 'consensus of cases of persuasive authority'" from other circuits by November 2023 placing a reasonable official on notice that Defendants' alleged actions were unconstitutional. al-Kidd, 563 U.S. at 742 (quoting Wilson v. Layne, 526 U.S. 603, 617 (1999)).

By 2023, at least three circuits had held in published opinions that prison officials could be liable under the Eighth Amendment for calling a prisoner certain derogatory terms. See Benefield, 241 F.3d at 1271 ("snitch"); Irving, 519 F.3d at 451 ("snitch");[4] Dongarra, 27 F.4th at 179 ("sex offender"). Other circuits had espoused similar views, albeit not expressly in the context of Eighth Amendment claims. See, e.g., Valandingham v. Bojorquez, 866 F.2d 1135, 1137-39 (9th Cir. 1989); Harmon v. Berry, 728 F.2d 1407, 1409 (11th Cir. 1984) (per curiam). By November 2023, then, a robust consensus of circuit authority placed a reasonable state official on notice that calling an inmate a "pedophile," "child molester," "chicken hawk," "skinner," "rapist," or "snitch" in front of other inmates violated the Eighth Amendment. See Irish, 979 F.3d at 77 (noting that the agreement of

---

[4] It is notable that as of 2008 -- more than a decade before the events at issue here -- the Eighth Circuit already felt that "the clear weight of authority in the circuits that have ruled on the question" would have put a reasonable officer on notice that labeling an inmate a snitch was a constitutional violation. Irving, 519 F.3d at 451.

three or four circuits is sufficient to clearly establish the law).

Defendants are not entitled to qualified immunity.

### ORDER

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. 243) is **DENIED**.


SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge

14