UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LANCE HULLUM,<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN D. ADAMS, TAYLOR J. LANDRY, STEVEN C. CLARK, and BRENDON P. METCALF,<br><br>Defendants. | Civil Action<br>No. 23-cv-10082-PBS |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER**

September 22, 2026

Saris, J.

**INTRODUCTION**

Plaintiff Lance Hullum, a convicted sex offender, brings this action against four officers at Souza-Baranowski Correctional Center ("SBCC"), a maximum security prison, alleging they verbally harassed him by calling him names like "skinner," "chicken hawk," and "pedophile" in violation of his Eighth Amendment rights. The four officers are Defendant Steven Clark, a "unit rover," and Defendants Taylor Landry, Stephen Adams, and Brendon Metcalf, all block officers (collectively, "Defendants"). They all deny calling Hullum derogatory names. Hullum alleges that the stress from the name-calling exacerbated his lupus symptoms. Hullum was never

assaulted by Defendants or other inmates as a result of the alleged harassment.

All parties waived their right to a jury trial. Hullum and six inmate witnesses testified in the case-in-chief. All four Defendants testified. The Court entered a directed verdict on the First Amendment retaliation claim, which Hullum never pressed or presented evidence to support. After assessing the credibility of the witnesses, the Court orders entry of judgment in favor of Defendants on Hullum's Eighth Amendment claim.

## **FINDINGS OF FACT**

The Court makes the following findings of fact based on the testimony and exhibits presented at the bench trial.[1]

Hullum was incarcerated at age seventeen after pleading guilty to four counts of rape of a child. Tr. 9:18-10:14. As of November 2023, he had completed serving his sentence for these offenses, but he remained in pretrial detention at SBCC on charges related to a separate incident in which he allegedly committed assault and battery on inmates at another facility where he was participating in a sex-offender treatment program. Tr. 31:5-32:18, 36:1-37:4.

[1] Record citations are to the page and line numbers of the transcript from the one-day bench trial (e.g., "Tr. 9:5-11" refers to lines 5-11 of page 9 of the trial transcript) or to an exhibit admitted at trial (e.g., "Ex. 9").

From November 2023 to April 2024, Hullum was detained in the H-2 Unit of SBCC. Tr. 35:6-14. Defendants Adams, Landry, Clark, and Metcalf served as correction officers in the H-2 Unit at that time, running the unit's shower, recreation, and grounds facilities. Tr. 11:19-12:5. SBCC is one of the most dangerous prisons in the state. Tr. 73:4-5. Calling an inmate derogatory names like snitch or pedophile at SBCC would create a substantial risk of harm to the inmate. Tr. 73:6-14, 100:2-6.

The following testimony was provided about each Defendant:

**Adams.** Hullum testified that Adams routinely called him a "pedophile," "chicken hawk," and "homo." Tr. 23:9-16. Adams denied calling Hullum names or seeing anyone else do so. Tr. 95:21-96:17. Hullum filed two informal grievances against Adams alleging multiple claims of misconduct, including that Adams discussed his crimes "on the unit air waves [sic] in front of other inmates" and that Adams called him a "child molester" when he was in his cell at night. Ex. 11. Three inmate witnesses testified at trial that they heard Adams calling Hullum derogatory names. Tr. 117:1-6, 147:9-24, 156:18-157:2.

**Landry.** Hullum testified that Landry called him names on a daily basis, including "child molester," "pedophile," "homo," "chicken hawk," and "snitch." Tr. 12:6-13:1. On November 26, 2023, Hullum filed an informal grievance stating that Landry called him a "pedophile." Ex. 9. Landry denied calling Hullum names or hearing

anyone else do so. Tr. 108:12-24, 109:20-23. No inmate witness testified to hearing Landry calling Hullum derogatory names.

**Clark.** Hullum testified that Clark routinely called him names, including "chicken hawk" and "child molester." Tr. 18:18-19. On December 28, 2023, Hullum filed an informal grievance stating that Clark told an inmate Hullum was a "child molester" and "chicken hawke [sic]" and that "someone in [Hullum's] unit needs to murder [him]." Ex. 10. Clark denied these allegations and denied hearing anyone else calling Hullum names. Tr. 62:13-23, 65:13-23. No inmate witness testified he heard Clark calling Hullum derogatory names.

**Metcalf.** Hullum testified that Metcalf called him derogatory names on a daily basis. Tr. 27:11-28:6. Hullum filed two informal grievances against Metcalf, alleging multiple claims of misconduct, including that Metcalf called him a "pedophile" in front of other inmates and that Metcalf "made homosexual comments directed toward" him. Exs. 9, 12. Metcalf denied calling Hullum names or observing any others doing so. Tr. 140:6-20. One inmate witness testified to observing Metcalf call Hullum derogatory names. Tr. 147:6-24.

Hullum acknowledged at trial that no correction officer or inmate ever physically harmed him in any way. Tr. 17:6-12, 23:2-7, 28:7-13, 38:4-21. But he testified that Defendants' alleged statements caused other inmates to call him derogatory names and

look up his conviction history. Tr. 13:4-8, 40:4-9. According to Hullum, these events caused him to "liv[e] in fear" because SBCC "is a very dangerous place." Tr. 29:6. In particular, Hullum claimed that Defendants' alleged statements exacerbated his pre-existing lupus, causing him to experience chills, tremors, muscle spasms, lesions, weight loss, sleep deprivation, and psychological distress. Tr. 29:7-11, 29:21-30:1. He was provided medication for lupus at SBCC. Tr. 30:14-15.

As stated, Hullum filed informal complaints about Defendants' alleged statements. Tr. 13:23-24, 14:23-15:5, 16:23-25, 20:23-21:4; see Exs. 9-12. He also called the staff misconduct hotline to report the allegations. Tr. 18:2-4, 56:11-12. He never filed formal written grievances because he believed that "an atmosphere of corruption" would foreclose receiving any response. Tr. 26:24-27:5.

**CONCLUSIONS OF LAW**

The Court addresses Hullum's Eighth Amendment failure-to-protect claim. Because he was a pretrial detainee at the time of the alleged events, Hullum is "protected under the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment; however, the standard to be applied is the same as that used in Eighth Amendment cases." Burrell v. Hampshire County, 307 F.3d 1, 7 (1st Cir. 2002). Under the relevant Eighth Amendment standard, Hullum "must show that he [was] incarcerated under conditions

posing a substantial risk of serious harm" and that each Defendant "acted, or failed to act, with 'deliberate indifference to [Hullum's] health or safety.'" Lakin v. Barnhart, 758 F.3d 66, 70 (1st Cir. 2014) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

While it is credible that some officers at SBCC called Hullum a pedophile or similar derogatory names, the Court finds that Hullum was not a credible witness with respect to his claims against Defendants for several reasons. He testified to having farfetched beliefs such as thinking that Defendants placed hidden cameras in his cell, that female and homosexual correction officers watched him using the toilet, and that correction officers placed coils in his cell's floor to track his movements. Tr. 51:23-52:5, 52:12-53:7. He also has shown a tendency to sue everyone in sight. In a proposed amended complaint, he named over one hundred defendants, essentially alleging that every officer and supervisor in the H-2 Unit verbally harassed him. Tr. 43:7-45:19. He made similar allegations against over forty officers at Plymouth County Correctional Facility, where he is currently incarcerated, as well as the sheriff of Plymouth County. Tr. 31:18-20, 46:16-47:6, 48:5-10. The Court thus concludes that Hullum was not sufficiently credible to meet his burden of proof with respect to Defendants Landry, Clark, and Metcalf because there is insufficient corroboration of his allegations.

However, the Court reaches a different conclusion about Defendant Adams. Three inmates independently corroborated Hullum's testimony that Adams called him derogatory names, and Hullum filed contemporaneous informal grievances.

Hullum must also prove that any derogatory name-calling by Adams caused him damages. Defendants invoke the Prison Litigation Reform Act ("PLRA"), which provides that "[n]o [f]ederal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Although the First Circuit has declined to decide whether this provision applies to constitutional claims, see Kuperman v. Wrenn, 645 F.3d 69, 73 n.5 (1st Cir. 2011), many circuits have held that it applies to all federal civil actions, including those alleging constitutional violations, see Thompson v. Carter, 284 F.3d 411, 417 (2d Cir. 2002) (collecting cases). This Court agrees with that majority rule. "Because the words '[f]ederal civil action' [in § 1997e(e)] are not qualified, they include federal civil actions brought to vindicate constitutional rights." Id. (first alteration in original). Hullum therefore cannot recover for psychological distress allegedly caused by Adams' statements unless he makes "a prior showing of physical injury." 42 U.S.C. § 1997e(e).

Hullum attempts to meet this burden by pointing to physical manifestations of his lupus, like lesions on his head. He testified

that his condition worsened due to the name-calling and that he experienced chills, tremors, muscle spasms, lesions, weight loss, and sleep deprivation. Tr. 29:7-11, 29:21-25. He sought treatment in prison for these symptoms and was provided medication. Tr. 30:11-15.

Where Hullum falters, however, is in demonstrating causation. Hullum did not procure a medical expert opinion or provide any documentation suggesting that Adams' derogatory statements about him exacerbated his lupus symptoms. Hullum was diagnosed with lupus in 2002. Tr. 53:17-18. He has no medical training of his own, and while doctors told him that stress can exacerbate lupus symptoms, there is no medical evidence that Adams' statements worsened Hullum's symptoms. Tr. 54:6-8, 55:1-4. Hullum's testimony, standing alone, is insufficient to demonstrate that Adams caused any compensable injury to Hullum, especially given the credibility issues undermining Hullum's testimony generally.

Because Hullum has failed to show that Adams' statements caused his injuries, he is not entitled to compensatory damages.

**ORDER**

The Court orders entry of judgment for Defendants on Hullum's Eighth Amendment claim.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge